IN THE UNITED STATES DISTRICT COURT          O
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

THOMAS H. CHAPMAN, JR., M.D.,      §
JULIO C. MOLINA, M.D.,             §
SUKLESH DANDONA, M.D.,             §
BENNIE HADAWAY, BESSIE             §
ROSENBAUM, and RICHARD WEST,       §
                                   §
        Plaintiffs,                §
                                   §
v.                                 §          CIVIL ACTION NO. H-02-2188
                                   §
PACIFICARE OF TEXAS, INC.,         §
PACIFICARE HEALTH SYSTEMS,         §
INC., and PRIMARY MEDICAL          §
CARE, INC.,                        §
                                   §
        Defendants.                §

<u>MEMORANDUM AND ORDER</u>

Pending are Defendants PacifiCare of Texas, Inc.'s and
PacifiCare Health Systems, Inc.'s (collectively "PacifiCare")
Motion for Summary Judgment (Document No. 116) and Defendant
Primary Medical Care, Inc.'s ("PMC") Motion for Summary Judgment
(Document No. 119).  After having carefully reviewed the motions,
responses, replies, and the applicable law, the Court concludes as
follows:

I.  <u>Background</u>

The background for this suit and identities of the parties may
be found in the Court's Memorandum and Order entered August 22,
2002, corrective Order entered April 17, 2003, and Memorandum and

Order entered October 23, 2003.  Remaining in this lawsuit are the following claims: (1) Patient Plaintiffs' claims under Title III of the Americans with Disabilities Act ("ADA") against PacifiCare and PMC (collectively, "Defendants"); (2) Patient Plaintiffs' claims under § 504 of the Rehabilitation Act against Defendants; (3) Physician Plaintiffs' claims under Title III of the ADA against PacifiCare; (4) Patient Plaintiffs' breach of contract claims against Defendants; (5) Patient Plaintiffs' Texas Deceptive Trade Practices Act ("DTPA") claims against Defendants; (6) Patient Plaintiffs' claims for tortious interference with physician-patient relationship against Defendants; (7) Physician Plaintiffs' claims for tortious interference with physician-patient relationship against PacifiCare; and (8) Physician Plaintiffs' claims for tortious interference with prospective business relations against PacifiCare.[1]  Both PacifiCare and PMC have filed motions for summary judgment seeking dismissal of all of Patient Plaintiffs' and Physician Plaintiffs' (collectively, "Plaintiffs") remaining claims.  Because Defendants' motions and memoranda in support advance similar arguments, the Court will consider the motions together.[2]

---

[1] All of Physician Plaintiffs' claims against PMC are currently pending before the American Arbitration Association. Document No. 119 at 3.

[2] Plaintiffs filed separate but virtually identical responses to the two motions for summary judgment, and citations are therefore made only to one response unless otherwise indicated.

## II.   Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  The moving party must "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986).

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998).  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice.   Id.   "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."   Id.

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986). All justifiable inferences to be drawn from the

underlying facts must be viewed in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986).  "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper.  Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993) (citing Matsushita, 106 S. Ct. at 1351).  On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." Id. Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial."  Anderson, 106 S. Ct. at 2513.

## II.  Discussion

### A.  Patient Plaintiffs' ADA and Rehabilitation Act Claims

In their Second Amended Complaint, Patient Plaintiffs allege that Defendants limited, denied, and/or delayed full and equal enjoyment of medical treatment and services in violation of Title III of the ADA,[3] and limited, denied, and/or provided unequal medical treatment and services in violation of § 504 of the

---

[3] Under Title III of the ADA, "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a).

Rehabilitation Act.[4]  *See* Document No. 63 ¶¶ 30-38.  Specifically, Patient Plaintiffs allege that because of their claimed disabilities, Defendants intentionally discriminated against them by, *inter alia*, limiting, denying, and delaying appropriate health care; engaging in certain practices, such as leaving Patient Plaintiffs in waiting and examination rooms for excessively long periods, with the goal of encouraging Patient Plaintiffs to seek medical services from another health care plan; refusing to refer Patient Plaintiffs to specialists; coercing physicians to limit or deny appropriate health care to Patient Plaintiffs; and subjecting physicians' health care decisions regarding Patient Plaintiffs to extraordinary review not applied to patients without disabilities. Id. ¶ 28.

Defendants argue they are entitled to summary judgment on Patient Plaintiffs' ADA claims because there is no evidence (1) that Patient Plaintiffs are disabled; (2) that Defendants operate any public accommodation, including Physician Patients' medical offices; or (3) that Patient Plaintiffs were treated differently than other Secure Horizons plan members or were otherwise discriminated against on account of their claimed

---

[4] Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to any discrimination under any program or activity receiving Federal financial assistance . . . ."  29 U.S.C. § 794(a).

disabilities.   *See* Document Nos. 116 at 7-16; 119 at 7-17. Defendants likewise contend that they are entitled to summary judgment on Patient Plaintiffs' Rehabilitation Act claims because there is no evidence that Patient Plaintiffs (1) are disabled, (2) are "otherwise qualified" for the medical treatment about which they complain; or (3) were subjected to discrimination by sole reason of their claimed disabilities. *See* Document Nos. 116 at 17-21; 119 at 18-21.   Assuming arguendo that Patient Plaintiffs are disabled and "otherwise qualified," and that Defendants operate a public accommodation, Patient Plaintiffs' ADA and Rehabilitation Act claims still fail because there is no evidence of discrimination.[5]

Patient Plaintiffs first argue that "[t]he financial incentives in the contracts that existed between PacifiCare and PMC provided the motive for PMC" to discriminate. *See* Document No. 123 at 23.   Although Patient Plaintiffs refer the Court to the more than one hundred pages of documents that constitute the contract between PacifiCare and PMC, Patient Plaintiffs fail to point out specifically what these "financial incentives" are or to explain how they furnished Defendants with a motive to discriminate against

---

[5] Plaintiffs contend that "the ADA requires a lower standard of discrimination than the Rehabilitation Act" because "the standard for discrimination in the ADA omits the restrictive term 'solely' as required by the Rehabilitation Act." Document No. 123 at 18.   Because, as explained below, Patient Plaintiffs' cannot show they were discriminated against at all, the Court need not address this argument.

disabled as opposed to non-disabled Secure Horizons members.  *See id.*  Patient Plaintiffs claim that Dr. Linda Peeno ("Peeno") "testified as to how these financial incentives create a motive to discriminate and . . . goes on to address PMC's medical decisions on some of the Secure Horizon members," *see id.,* but the deposition pages to which Patient Plaintiffs refer the Court provide no support for this assertion.  *See* Document No. 123 ex. 13 at 82-89, 94-95.[6]  Patient Plaintiffs point also to the deposition of PMC's medical director, Dr. Miguel Franco ("Franco"), in which he stated that he was a part-owner of PMC who shared in approximately 25 percent of PMC's profits and losses, as evidence of Defendants' financial incentives to discriminate.  *See* Document No. 123 ex. 18 at 20.[7]  However, Patient Plaintiffs provide neither explanation nor evidence linking Franco's ownership interest in PMC to any discriminatory treatment Patient Plaintiffs may have suffered on

---

[6] Specifically, pages 82 through 89 of Peeno's deposition discuss allegations that Physician Plaintiffs billed for services that they did not provide; there is no mention of any "financial motive" for PMC to discriminate against the disabled or any Patient Plaintiff.  *See* Document No. 123 ex. 13 at 82-89.  Similarly, on pages 95 and 96, Peeno simply stated that she had not reviewed Patient Plaintiffs' medical records and therefore did not have enough information to render an opinion as to whether the care they received was in compliance with the standard of care; she mentioned nothing about specific medical decisions or Secure Horizon members.  *Id.* at 95-96.

[7] Patient Plaintiffs also claim that Franco was "ultimately in charge of approving or denying referrals for treatment," citing pages 20 through 24 of his deposition, but fail to provide those pages to the Court.  *See* Document No. 123 ex. 18.

account of their claimed disabilities.   Patient Plaintiffs'
assertions regarding Defendants' "financial incentives" to
discriminate are not supported by the summary judgment record.

Patient Plaintiffs further state that Physician Plaintiffs
"testified about other patients who suffered bad treatment which
shows a pattern of behavior."  Document No. 123 at 23.  None of the
record references provided by Patient Plaintiffs, however, supports
this broad assertion.  For example, Patient Plaintiffs refer to a
portion of Dr. Chapman's deposition where he described an instance
in which he had difficulty obtaining an ophthalmologist referral
for a patient.  *See* Document No. 123 ex. 9 at 153-55.  However,
nothing in Dr. Chapman's testimony indicates that Defendants denied
the referral because the patient was disabled.  *See* id.  In fact,
when asked why PMC denied the referral, Dr. Chapman responded "I
don't know why they did it."   Id. at 155.   The Physician
Plaintiffs' testimony is not evidence that Defendants discriminated
against patients because of their disabilities.  To the contrary,
Dr. Chapman admitted that he had no evidence that PMC treated
disabled Secure Horizons members differently than it treated non-
disabled members; Dr. Dandona could not recall one patient who was
denied care or was otherwise treated differently because of a
disability; and Dr. Molina admitted that he had no evidence of any
patient being denied care on account of any disability.   *See*

Document No. 119 ex. J at 46-48, 52-55; ex. N at 272-74; ex. L at 82-84.

Moreover, the individual Patient Plaintiffs have failed to produce any evidence that the acts upon which they base their ADA and Rehabilitation Act claims were in fact discriminatory. Patient Richard West's ("West") claims center around a one-week stay at Polly Ryan Hospital, where he was treated for a broken pelvis. *See* Document No. 123 ex. 3 at 107. West complains that: (1) "PMC/ Pacificare or someone at the hospital under their control would not notify Dr. Chapman that his long time patient" West had been hospitalized; (2) West "had to suffer through the weekend without sufficient pain medication"; (3) West was "moved from room to room" "for no reason" during his hospital stay; (4) someone at Polly Ryon Hospital recommended that West be moved to a nursing home; and (5) the "PMC assigned hospitalist" "didn't come around" "but once or twice" during West's hospitalization. *See* Document No. 122 at 25; Document No. 123 ex. 3 at 42-44, 107.

During his deposition, however, West admitted that he does not know whether Defendants made any of the decisions or were otherwise responsible for the incidents about which he complains. *See*, *e.g.*, Document No. 119 ex. G at 53, 61, 87-99.[8]   There is no other

---

[8] In fact, West admitted in his deposition that he first learned who PMC was when he asked his attorney during a bathroom break; before that deposition break, West had "never heard of them." *See* Document No. 119 ex. G at 30-31, 84-87.

summary judgment evidence that Defendants controlled Polly Ryon Hospital, its staff, or the course of West's medical treatment while he was hospitalized there.  *See* id. at 98-99.  Indeed, the summary judgment record contains no evidence of Defendants' relationship with Polly Ryon Hospital at all.  Even if Defendants were somehow responsible for these incidents, there is no evidence that the incidents were in any way discriminatory based on West's claimed disability.  West testified that he has no knowledge as to whether Defendants treated him differently than they treated any other Secure Horizons member.  Id. at 108.  Although Peeno testified during her deposition that she thought West had been discriminated against, *see* Document No. 123 ex. 13 at 162, she provided no explanation or evidentiary support for her conclusion. Peeno admitted she did not review West's medical records, and therefore did not have enough information to render an opinion as to the propriety of his treatment at Polly Ryon, and further admitted that she did not know how other PacifiCare members were treated.  *See* Document No. 125 ex. Q at 166.  Neither West's nor Peeno's testimony provides a factual basis from which a reasonable jury could conclude that Defendants discriminated against West on account of any disability.

Similarly, the summary judgment record contains no evidence that Defendants discriminated against Patient Plaintiff Bennie Hadaway ("Hadaway").  Hadaway alleges that: (1) "Secure Horizons

10

and/or PMC removed [Glucotrol XL, the diabetes medication Hadaway had been taking,] from the formulary list which forced [his] doctors to experiment with many different medications that were on the formulary list to control [his] diabetes"; (2) Hadaway's wife "had to argue, on [his] behalf, for two weeks with Secure Horizons and/or PMC to obtain" a referral to Dr. Matsu, Hadaway's orthopedic surgeon, for a knee replacement surgery; (3) Secure Horizons "denied and delayed" prescribed physical therapy after Hadaway's surgery; and (4) Secure Horizons "would not cover the cost" of the non-formulary antibiotic that Hadaway was prescribed after his surgery.  Document No. 123 ex. 6.  Hadaway fails, however, to raise a genuine issue of material fact that disability discrimination motivated any of these incidents.

Hadaway admitted during his deposition that he knew of no evidence that Defendants treated him differently than they treated other Secure Horizons members, and he conceded that with respect to his own treatment, he had no personal knowledge of any wrongdoing by Defendants.  *See* Document No. 119 ex. E at 9, 36.  Hadaway's wife ("Mrs. Hadaway") provided detailed testimony about each of the incidents comprising her husband's claims, yet nothing in her deposition indicates that Defendants intentionally limited, denied, delayed, or provided unequal medical treatment to her husband, let alone that they did so because he suffered from a disability.  To the contrary, Mrs. Hadaway's testimony indicates that Defendants'

formulary list applied to all Secure Horizons members and contained other diabetes drugs; that the delayed orthopedic referral was attributable to a clerical error by PMC;[9] that although Hadaway's physical therapist failed to obtain preauthorizations for two of Hadaway's physical therapy sessions, and therefore "had to eat those two visits," Hadaway received the physical therapy services prescribed by Dr. Matsu; and that Hadaway's physician erred in prescribing a non-formulary antibiotic after Hadaway's surgery. *See* Document No. 125 ex. S at 84-90, 104-27, 136-38, 139-41. Although Peeno stated that she believes Defendants discriminated against Hadaway, her deposition testimony reveals no factual basis for this conclusion, and she admitted that she had no information as to whether Defendants treated Hadaway differently than they treated other Secure Horizons members. *See* Document No. 125 ex. Q at 162-68.[10]

---

[9] Mrs. Hadaway explained that although PMC initially denied her husband's referral to Dr. Matsu based on an erroneous determination that Dr. Matsu was an out-of-network provider, once Mrs. Hadaway contacted Defendants about the problem, PMC acknowledged its mistake and authorized the referral, and Hadaway saw Dr. Matsu within two weeks. *See* Document No. 125 ex. S at 104-05, 118-19. Mrs. Hadaway further testified that she was aware of no evidence indicating that PMC's delay in referring her husband to Dr. Matsu was related to any disability her husband may have had. Id. at 169.

[10] When asked, for example, whether she had any evidence that Hadaway was "refused medication any different than any other patient insured by PacifiCare or Secure Horizons," Peeno responded "I don't know how the rest of PactifiCare patients are treated. Maybe they're all treated like this." *See* Document No. 125 ex. Q at 166.

Finally, Patient Plaintiff Bessie Rosenbaum's ("Rosenbaum") deposition indicates that she is not pursuing ADA or Rehabilitation Act claims against either PacifiCare or PMC. *See*, *e.g.*, Document No. 118 ex. I at 62.  When asked about her specific complaints against Defendants, Rosenbaum stated that Defendants would not pay for follow-up visits to Dr. Ansell, her orthopedic surgeon, after he was no longer part of the provider network.  *See* id. at 35, 48; Document No. 119 ex. D at 66-69.  Rosenbaum admitted, however, that Defendants denied coverage for her visits not because she was disabled but because Dr. Ansell was not in the network.  Document No. 118 ex. I at 95, 100-01.  Rosenbaum further agreed that PMC did not limit or delay any heath care to her; that she had "no complaints against either PacifiCare or PMC" "about any hassles or referrals that were significantly delayed between the time frame October 1, 1999 to January 2001," which is the relevant period identified by Plaintiffs in their Second Amended Complaint;[11] and that she only joined in filing the lawsuit "to help Dr. Molina" because he "asked [her] if [she] would be willing."  Id. at 60-62, 98, 106-07.

---

[11] During Rosenbaum's deposition, her counsel stated: "We'll put it on the record that Bessie Rosenbaum has no complaints against PMC. Other--and there's the Ansell referral that technically was within the period . . ." Document No. 118 ex. I at 98. As discussed above, however, Rosenbaum testified that Defendants would not pay for visits to Dr. Ansell because he was not in the network; the denial was not related to any disability. *See* id. at 95, 100-01.

In sum, Patient Plaintiffs have failed to raise a genuine issue of material fact that Defendants discriminated against them on account of their claimed disabilities.  Although the summary judgment evidence indicates that West was not satisfied with his stay at Polly Ryon Hospital, there is no evidence that Defendants were responsible for West's medical treatment or that such treatment was discriminatory or different in quality from what a non-disabled Secure Horizons member would have received.  Likewise, although the summary judgment record establishes that Hadaway and his physicians encountered difficulties when navigating his Secure Horizons plan, there is simply no evidence that the delays and difficulties experienced by Hadaway differed in any respect from the delays and difficulties experienced by all Secure Horizons members from time to time.  Finally, Rosenbaum's deposition testimony indicates that she is not pursuing discrimination claims against PMC or PacifiCare.  Defendants are therefore entitled to summary judgment on all of Patient Plaintiffs' ADA and Rehabilitation Act claims.

B.   <u>Patient Plaintiffs' DTPA and Breach of Contract Claims</u>

According to Patient Plaintiffs, Defendants violated the DTPA by "representing in marketing materials and patient information materials that the services offered by the Defendants are of a particular standard, quality or grade when in fact they are of

another," and "Defendants breached their care contracts with the Patient Plaintiffs by failing to provide both the services and quality of services which were promised."  Document No. 63 ¶¶ 47-49, 57.  Defendants argue that they are entitled to summary judgment because they did not engage in any conduct actionable under the DTPA and because they did not have contracts with any of the Patient Plaintiffs.  Document Nos. 116 at 23-25; 119 at 21-24.  Patient Plaintiffs concede that there are no contracts between themselves and PMC but argue that "because PMC and PacifiCare operated a joint enterprise called Secure Horizons, PMC can be held liable to the Patient Plaintiffs can be held liable [sic] for a breach of the contract and for violations of the DTPA."  Document No. 122 at 21.

Even if Patient Plaintiffs could demonstrate that Defendants operated a joint enterprise, Patient Plaintiffs' DTPA and breach of contract claims would still fail because there is no evidence of (1) any false, misleading, or deceptive act committed by PacifiCare upon which Patient Plaintiffs relied or (2) any enforceable contract between Patient Plaintiffs and PacifiCare.  Patient Plaintiffs' base their DTPA and breach contract claims on two instances of what Patient Plaintiffs label "misrepresentations and/or breach of contract."  *See* Document No. 123 at 24.  Patient Plaintiffs state that "[o]ne such misrepresentation and/or breach of contract is seen in" a PacifiCare brochure, which states that

"[a]s a Member of Secure Horizons, you have the right to . . . [t]imely access to your Primary Care Physician/Provider and Referrals to Specialists when Medically Necessary," and which Patient Plaintiffs claim was violated when Polly Ryon Hospital failed to contact Dr. Chapman during West's hospitalization. *See id.* (citing ex. 15 at PCTX 326). Patient Plaintiffs claim that "[a]nother misrepresentation is made where the brochure states each patient will '[b]e treated with dignity and respect and . . . have [his or her] right to privacy recognized'" because Polly Ryon Hospital moved West "from room to room too much," which caused him "considerable pain," and because West's hospital doctors "were never around." Id. These allegations relate only to West and therefore, to begin with, Defendants are entitled to summary judgment on Hadaway's and Rosenbaum's DTPA and breach of contract claims.

With respect to West's DTPA claim, there is no summary judgment evidence that PacifiCare was responsible for the conduct about which West complains, or that West ever saw the PacifiCare brochure before becoming a Secure Horizons member. Thus, there is no evidence of producing causation or reliance, both of which are essential elements of proof for the DTPA violations alleged by West. *See* Henry Schein, Inc. v. Stromboe, 102 S.W.3d 675, 686

16

(Tex. 2002).  West's DTPA claims against both PacifiCare and PMC fail as a matter of law.[12]

West's breach of contract claims also fail because West cannot raise a genuine issue of material fact that the Secure Horizons brochure constitutes an enforceable contract.  *See* <u>Wright v. Christian & Smith</u>, 950 S.W.2d 411, 412 (Tex. App.--Houston [1st Dist.] 1997, no writ) (listing "the existence of a valid contract" as an essential element of a breach of contract action).  The brochure is part of a general explanatory guide for members of the Secure Horizons health care plan; it includes no specific promises or definite obligations concerning the Secure Horizons program. *See* Document No. 123 ex. 15.  There is no evidence that PacifiCare intended the brochure as a contract, and nothing in the brochure itself shows that a contract arose between PacifiCare and West concerning the contents of the brochure.  Because the brochure is

---

[12]  The Second Amended Complaint also contains conclusory allegations that Defendants violated DTPA § 17.50(a)(3), which provides that a consumer may recover for "any unconscionable action or course of action" that is the producing cause of damages, and (a)(4), which provides that a consumer may recover for "the use or employment by any person of an act or practice in violation of Article 21.21, Insurance Code" that is the producing cause of damages.  Patient Plaintiffs allege independent violations of Article 21.21 of the Insurance Code as well.  *See* Document No. 63 ¶¶ 48-51.  Although Defendants moved for summary judgment on these claims, *see* Document Nos. 116 at 24-25; 119 at 21-23, Patient Plaintiffs did not defend them in their responses.  Because Patient Plaintiffs provide neither explanation nor evidence as to how Defendants violated these sections of the DTPA and Insurance Code, the allegations are without merit and will also be dismissed.

unenforceable as a contract, summary judgment will be granted on West's breach of contract claims.

C.   Plaintiffs' Tortious Interference With Physician-Patient Relationship Claims

Plaintiffs also assert claims for tortious interference with the physician-patient relationship. Specifically, Plaintiffs allege that Defendants are liable for "encroaching on the physician's decision-making process through the imposition of cost-containment incentives," "creating a contracting scheme that discouraged the treatment of high-cost patients," and "interfering with the ability of Physician Plaintiffs to appropriately advocate for their patients' needs." *See* Document No. 63 ¶¶ 63-64. Defendants question whether such a cause of action exists under Texas law, but argue that even if it does, Plaintiffs have presented no evidence in support of their claims. *See* Document Nos. 116 at 23; 119 at 24.

In response, Plaintiffs cite several cases for the proposition that tortious interference with the physician-patient relationship is a recognized cause of action in Texas, but Plaintiffs' argument that the summary judgment record in *this case* supports such a claim consists of only one sentence, in which Plaintiffs state--without referring to or citing any summary judgment evidence--that "PMC and PacifiCare interfered with the Patient Plaintiffs' relationship through its [sic] control over the approval and denial of medical

18

services and ultimately by wrongfully terminating the Physician Plaintiffs." *See* Document No. 123 at 25.  However, there is no summary judgment evidence that Defendants controlled "the approval and denial of medical services"; that PMC's performance of its duties under its contract with PacifiCare--such as making coverage decisions and granting preauthorizations--constituted tortious or unlawful conduct; or that Defendants ever declined to pay for medically necessary services to Patient Plaintiffs.  Moreover, the summary judgment evidence conclusively establishes that PacifiCare was not a party to Physician Plaintiffs' contracts with PMC; that PacifiCare contracted directly with Physician Plaintiffs after PMC elected to terminate its contracts with Physician Plaintiffs; that those direct contracts began on the day after Physician Plaintiffs' contracts with PMC ended; and that PacifiCare's direct contracts with Physician Plaintiffs enabled Patient Plaintiffs to continue their relationships with their respective Physician Plaintiffs without interruption.  *See*, *e.g.*, Document No. 123 exs. 2; 20; 21 at 35-37, 74-76; 22 at 136.  Plaintiffs point to no summary judgment evidence that would permit an inference that Defendants tortiously interfered with the relationships between Physician Plaintiffs and Patient Plaintiffs, and summary judgment will therefore be granted on Plaintiffs' tortious interference with the physician-patient relationship claims.

19

D.   Physician Plaintiffs' ADA Claims and Tortious Interference
     With Prospective Business Relations Claims Against PacifiCare

     Physician Plaintiffs allege that PacifiCare "intentionally
harassed, discriminated against, and retaliated against Physician
Plaintiffs for their association with Patient Plaintiffs in
violation of the ADA."  Document No. 63 ¶ 39.[13]  Specifically,
Physician Plaintiffs allege that "Defendants tried to pressure
Physician Plaintiffs to contain costs by reducing the amount of
medical services being provided to their patients," but when
Physician Plaintiffs "refused to bend to Defendants [sic] pressure
about 'over utilizing' the system, after consulting with
PacifiCare, PMC terminated [its] contract with Physician
Plaintiffs."  See Document No. 123 at iii.  Physician Plaintiffs
further contend that PacifiCare "engaged in a malicious campaign to
interfere with and disrupt Physician Plaintiffs' business
relationships with their patients" by "hindering and frustrating
the efforts of their former patients to get treatment from them,"
"denying the patients their freedom of choice in selecting their
treating physician," and "making false allegations of fraudulent,

_____

     [13] Title III of the ADA also provides that "[i]t shall be
discriminatory to exclude or otherwise deny equal goods, services,
facilities, privileges, advantages, accommodations, or other
opportunities to an individual or entity because of the known
disability of an individual with whom the individual or entity
is known to have a relationship or association."  42 U.S.C.
§ 12182(b)(1)(E).

inaccurate, or incomplete charts associated with filing claims for payment."  Document No. 63 ¶ 43.

PacifiCare moves for summary judgment on these claims, arguing that the summary judgment record contains no evidence that PacifiCare (1) discriminated against Physician Plaintiffs, or (2) engaged in independently tortious conduct or otherwise attempted to interfere with any prospective business relationship of Physician Plaintiffs.  *See* Document No. 116 at 16, 21-23.  Physician Plaintiffs offer no defense of their ADA or tortious interference claims in response to PacifiCare's motion for summary judgment. *See* Document No. 123.  Rather, Plaintiffs' brief in response to the summary judgment motion focuses wholly upon *Patient Plaintiffs'* claims.  Id.  Under such circumstances, courts have treated undefended claims as abandoned.  *See*, *e.g.*, Scales v. Slater, 181 F.3d 703, 708 n.5 (5th Cir. 1999) (noting that plaintiff abandoned her disparate impact claim in district court when she neither contested defendant's arguments for dismissal of that claim nor suggested that her statistical evidence demonstrated pretext); Thompson v. ExxonMobil Corp., 344 F. Supp. 2d 971, 976 (E.D. Tex. 2004) (holding that where defendant fully briefed all of plaintiffs' claims on summary judgment--and plaintiffs only responded on two claims--plaintiffs were deemed to have abandoned their remaining claims).

Apart from the claims having been abandoned, however, Physician Plaintiffs' response is wholly insufficient to withstand PacifiCare's properly supported motion for summary judgment. *See* Smith ex rel. Estate of Smith v. U.S., 391 F.3d 621, 625 (5th Cir. 2004) ("To survive summary judgment, the nonmoving party must submit or identify evidence in the summary judgment record (such as affidavits, depositions, answers to interrogatories, or admissions on file) that designate *specific facts* showing there is a genuine issue of fact.") (citations omitted); Ragas v. Tenn. Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998) ("The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. . . . Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.") (citations omitted). Because Physician Plaintiffs point to no specific evidence in the summary judgment record that rebuts the arguments and evidence submitted by PacifiCare in support of its motion for summary judgment on these claims, and because Physician Plaintiffs have failed to raise a genuine issue of material fact on these claims, PacifiCare is entitled to summary judgment on Physician Plaintiffs' ADA and tortious interference with prospective business relations claims.

III. <u>Order</u>

For the reasons set forth, it is hereby

ORDERED that Defendants PacifiCare of Texas, Inc.'s and PacifiCare Health Systems, Inc.'s Motion for Summary Judgment (Document No. 116) and Defendant Primary Medical Care, Inc.'s Motion for Summary Judgment (Document No. 119) are GRANTED, and all of Patient Plaintiffs' and Physician Plaintiffs' remaining claims are DISMISSED on the merits.

The Clerk shall notify all parties and provide them with a signed copy of this Order.

SIGNED at Houston, Texas, on this 18th day of April, 2005.

Ewing Werlein, Jr.
United States District Judge

23